### In re RIVER OAKS FURNITURE, INC. R.O. East, Inc. Gaines Manufacturing Co. R.O. West, Inc.

### River Oaks Furniture, Inc., Plaintiff,

### v.

### BDO Seidman, BDO Seidman, LLP, Jerome Walsh, Walsh Communications, Inc., Ronald G. Ashby, James B. Cross, Eileen M. McGinley, Leland E. Graul, Jack A. Weisbaum, and Scott M. Univer, Defendants.

Bankruptcy Nos. 98–21152, 98–21153, 98–21154, 98–21155.
Adversary No. 98–2172.

United States Bankruptcy Court, N.D. Mississippi.

Dec. 22, 2000.

See also 276 B.R. 507.

Walter H. Boone, James W. Newman, IV, Alan Walter Perry, Jackson, MS, for plaintiff.

Donna M. Barnes, L. F. Sams, Jr., Tupelo, MS, D. Andrew Phillips, Oxford, MS, for defendants.

## OPINION

DAVID W. HOUSTON, III, Bankruptcy Judge.

On consideration before the court is a motion for partial summary judgment filed by the defendants, BDO Seidman, BDO Seidman, LLP, Jerome Walsh, Walsh Communications, Inc., Ronald G. Ashby, James B. Cross, Eileen M. McGinley, Leland E. Graul, Jack A. Weisbaum, and Scott M. Univer, (referred to collectively herein as BDO); response thereto having been filed by the plaintiff, River Oaks Furniture, Inc., (referred to herein as River

Oaks); and the court, having heard and considered same, hereby finds as follows, to-wit:

## I.

The court has jurisdiction of the parties to and the subject matter of this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. Although the issue, which is the subject of the motion for partial summary judgment, would be categorized primarily as a non-core proceeding, the parties have agreed that this court may enter final orders in this adversary proceeding as contemplated by 28 U.S.C. § 157(c)(2).

## II.

In essence, the motion for partial summary judgment filed by BDO seeks the dismissal of Count I of the Third Amended Complaint through which River Oaks seeks damages against BDO for professional malpractice, negligence, and breach of contract allegedly incurred in connection with the installation and implementation of the SYMIX computer system. The basis for the motion is two fold, to-wit:

1. River Oaks represented in the course of a Rule 30(b)(6) [Federal Rules of Civil Procedure] deposition, as well as, in arguments before the court that evidence of River Oaks' damages related to the installation and implementation of the SYMIX system would be presented through expert testimony.

2. All expert reports and expert depositions have now been received and taken in this proceeding, and there is no expert testimony quantifying any damages suffered by River Oaks concerning the computer system.

River Oaks has conceded that none of its expert witnesses quantified damages insofar as the SYMIX system is concerned. However, in its response to the motion for partial summary judgment, River Oaks takes the following position:

1. If successful on the SYMIX claim, River Oaks contends that it is entitled to the value of the lost use of the SYMIX system which can be calculated as interest on the funds invested by River Oaks into the system prior to its conversion.

2. The damages to River Oaks, which would be attributable to the SYMIX claim, do not require expert testimony for support. Rather, these damages can be simply calculated by applying the legal rate of interest at 8% per annum to the funds that River Oaks had invested in the system as of June 30, 1995, for a period of 19 months, until February, 1997. (In its memorandum brief, River Oaks asserts that the funds that it had invested through June 30, 1995, totaled $2,483,435.83. Applying the 8% per annum rate of interest to that amount for the 19 month period that River Oaks was without the fully operational SYMIX system, translates into damages for the loss of use in the sum of $314,568.54.)

3. Alternatively, River Oaks contends that the court should bifurcate the trial of this proceeding and conduct a separate hearing subsequently as to the SYMIX claim if such a subsequent trial would be deemed necessary.

## III.

As factual background, the court would point out that BDO contractually agreed with River Oaks to assist in defining an implementation process that would insure a timely and effective installation of the SYMIX system. In addition, it agreed to assist in managing the overall activity related to the installation and implementa-

tion of the system while providing specific technical assistance in selected areas. The date first set for the conversion of the River Oaks existing system to the SYMIX system was December 31, 1994, but this was pushed back to July, 1995. The first attempt at conversion at that time was unsuccessful. The conversion was not fully completed until February, 1997, nineteen months later.

The SYMIX computer system is comprised of numerous modules. These modules are designed to perform specific functions within the system, for example, credit and accounts receivable; scheduling—master, cut and daily; inventory control; shipping; purchasing and accounts payable; sales and marketing; accounting, etc. Some of the modules were fully operational on the date of the initial "go live" effort while others came "on line" intermittently during the 19 month period of time from July, 1995, until February, 1997. For a discussion of the modules, their effective dates of becoming operational, as well as, their anticipated efficiency, see the interoffice memorandum prepared by River Oaks employee, Jim Jackson, to River Oaks Chief Financial Officer, Johnny Walker, dated December 30, 1996. (Exhibit No. 1201 to the testimony of Jim Jackson.)

In its complaint, River Oaks claimed that the conversion to SYMIX had a significant negative impact on its business and operations. River Oaks alleged that production ground to a halt, that it had to re-enter orders in its existing "Sofa" computer system resulting in misplaced and incorrect orders, as well as, the inability to track orders through the system and respond to customer inquiries. River Oaks contended that it lost control of fabric procurement which resulted in substantial over purchases. However, the River Oaks' witnesses have been unable to identify any

particular order which was not filled nor any specific customer that was lost as a result of the conversion.

In summary, River Oaks has not been able to quantify with any meaningful precision the lost profits or extra costs that it suffered. Because of these developments, River Oaks now takes the position that it was denied the use of a fully "integrated" system, which it was contractually promised, for a period of 19 months. It seeks compensation for the loss of the use of the "integrated" system through the interest calculation as discussed hereinabove.

## IV.

In its motion for partial summary judgment, BDO reminded the court of the following:

1. Although River Oaks designated Johnny Walker as a Rule 30(b)(6) witness to speak on Area of Inquiry Number 61 (all damages suffered from any count of the complaint), Walker was instructed not to answer questions related to the estimation of damages at the deposition. Counsel for River Oaks advised BDO that all testimony related to damages would be furnished through expert witnesses. (Parenthetically, the court would note that this comports with the provisions of the Revised Order entered by this court in deciding a motion for Rule 37 sanctions filed by BDO. The court commented, "[T]his order shall specifically not be considered as applicable to the *amount* of damages allegedly suffered by River Oaks, the testimony relative to which was requested in area of inquiry number 61. The court reserves the right to address this concern at the conclusion of the expert phase of discovery which will be completed subsequently." See

Revised Order entered February 24, 2000.)

2. At a December 8, 1999, hearing, counsel for River Oaks indicated that its expert witness, Gary French, was preparing a damage report which would include damages related to the computer engagement.

3. Following the preparation and submission of his expert witness report, French was deposed by BDO and indicated that he had made no damage analysis or computation regarding the SYMIX claim.

4. At a conference held between the parties and the court on November 17, 2000, counsel for River Oaks acknowledged that no damages had been calculated by any expert concerning the SYMIX claim.

### V.

When initially reviewing the response filed by River Oaks to the motion for partial summary judgment, the court was somewhat uncertain as to how River Oaks had derived its SYMIX investment figure of $2,483,435.83. Following a more thorough analysis, the court sees that River Oaks calculated only the costs incurred *before* June 30, 1995, a date prior to the "go live" effort. (See page 8, River Oaks' response brief.) Counsel for BDO commented on this factor in its rebuttal memorandum as follows:

"...In the instant case, had River Oaks revealed interest on lost use damages as its theory of damages or even a theory of damage, defendants would have conducted discovery (both factual and expert depositions and document requests) on a number of issues including subjecting each River Oaks employee to examination regarding his capitalized time,[1] determining the costs and details of the amounts River Oaks paid to vendors, and quantifying the benefits of the modules as implemented. As it is, defendants have nothing but the contentions and argument of counsel regarding the damage computation...."

BDO rebuttal memorandum at page 3 with the accompanying footnote.

The pertinent comment by BDO is that "River Oaks has no testimony regarding capitalization of costs for the period of time (1993—mid 1995) upon which it cur-

---

1. In the brief amount of discovery which has been conducted on this issue, it has already been determined that River Oaks did not truthfully represent to BDO as its auditor the amount of time expended by some of its employees on the computer project. For example, although 100 percent of Jim Jackson's time was capitalized on the computer project from the time he became River Oaks' project manager, he testified that he was called away from the project for weeks at a time to conduct inventory and to prepare forecasts for BNY. (*See* Jackson 30(b)(6) deposition at 55–57, 130–31.) In any event, this Court's Revised Order regarding Rule 37 sanctions "conclusively bound" River Oaks to the testimony of Johnny Walker and Jim Jackson regarding areas of inquiry 44 and 45 (capitalization of the costs of the computer system, including personnel time and River Oaks' method of computing the amount of time its personnel expended on the computer project.) (Revised Order entered 2/24/00 at 9–10.) Jim Jackson was designated only to testify concerning the time frame when he became River Oaks' project manager (fall 1995 to present), and testified only with respect to that period. (Jackson 30(b)(6) at 127, 136.) Johnny Walker had no knowledge regarding the capitalization methodology; he "didn't get down to that level of detail." (Walker 30(b)(6) deposition at 119–20.) Accordingly, River Oaks has no testimony regarding capitalization of costs for the period of time (1993–mid 1995) upon which it currently seeks to compute damages. Defendants respectfully request the Court to bind River Oaks to the testimony outlined in the Revised Order, and preclude introduction of testimony from other sources.

rently seeks to compute damages." It can be discerned from the testimony of Jim Jackson, the Rule 30(b)(6) witness designated to address the capitalization of costs beginning in the fall of 1995, that River Oaks incurred expenses and invested employee time in the SYMIX project *after* the "go live" effort. Johnny Walker, the Rule 30(b)(6) witness designated to discuss the period *prior* to the fall of 1995, provided no relevant costs capitalization testimony. (See footnote No. 1.)

River Oaks indicated, however, that it developed its investment figure through Richard Gill, one of BDO's auditors, who testified that he audited the costs as set out on Exhibit No. 1392, subjected those costs to detail test work, and concluded that the costs were substantiated. The court has examined the computer costs accumulation for the month ending June, 1995, and sees that the figure extrapolated by River Oaks appears on that document. The court now understands how and where River Oaks derived the investment figure to which it would apply its interest rate assessment. This, however, does not conclusively establish that this is the legally correct starting point to begin the calculation, particularly if Gill was not furnished accurate information. Additionally, BDO was somewhat "lulled" into conducting no discovery relative to this capitalized costs number because the calculation of damages resulting from this theory of recovery was to come from the expert witness. Clearly, no discovery was derived from Walker's Rule 30(b)(6) deposition.

times during the pertinent 19 month period that River Oaks contends that it sustained loss of use damages. While River Oaks did not have a fully "integrated" computer system in place, it was certainly receiving benefits from those modules that had been placed in operation and were continuing to be placed in operation as work progressed. It is legally impermissible to permit River Oaks to claim interest on its investment, as of June 30, 1995, for the full 19 month period, since it was receiving quantifiable benefits from components of the system during this same period of time. In the opinion of the court, damages must be calculated on the value of the particular modules that were not operational for the period of time that they were not "on line." The first step would be to calculate the value of the specific module to the system as a whole, and then determine the precise amount of time that that module was not operational during the 19 month period. The computation of these numbers would then have to be applied ratably to River Oaks' capitalized investment in the computer system, based on legitimate verifiable costs. If this analysis were undertaken, the resulting number would obviously be less than the total damages claimed by River Oaks in the sum of $314,568.54. The calculation of these numbers, particularly the benefit of a specific module to the entire system, would, in the opinion of the court, necessitate specialized or expert testimony. Computing damages in this context is certainly beyond the discretion of this court as the finder of fact.

## VI.

■ As noted above, the SYMIX system is comprised of numerous modules. The undisputed testimony is that some of the modules were operating effectively on the date of the initial conversion, while others became operational at intermittent

## VII.

■ River Oaks did not disclose to BDO that it was going to claim interest as the exclusive measure of damages for the loss of use of the SYMIX system until November 17, 2000. By that time, all of the parties had become aware that the expert

witness, who was slated originally to provide this testimony, had not quantified damages related to the SYMIX claim. Considering the methodology that must be utilized to calculate the interest damages, as discussed hereinabove, the court is of the opinion that it is now too late to posture this theory. Even more significantly, considering the Rule 30(b)(6) witnesses' testimony as to this particular area of inquiry, coupled with the fact that no expert testimony has been developed, it is impossible for River Oaks to present testimony that could substantiate this essential element of proof. Consequently, in the absence of quantifiable damages, the court must conclude that the motion for partial summary judgment filed by BDO as to the SYMIX claim must be sustained.

An order will be entered consistent with this opinion.

